Vernal L. MOORE and Gerina
D. Whethers, Plaintiffs–
Appellants,

v.

PHILIP MORRIS COMPANIES,
INC. and James R. Beard, Sr.,
Defendants–Appellees.

No. 92–6558.

United States Court of Appeals,
Sixth Circuit.

Submitted Sept. 30, 1993.

Decided Oct. 13, 1993.

Aubrey Williams, Gerry Ellis (briefed), Louisville, KY, for plaintiffs-appellants.

Douglas W. Becker, Becker, Farris & Gallagher and Phyllis Deeb, Louisville, KY (briefed), for defendants-appellees.

Before: MILBURN and GUY, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.

MILBURN, Circuit Judge.

Plaintiffs, the executrix of Lillian D. Beard's estate and Beard's daughter, appeal the district court's grant of summary judgment in favor of defendants, Philip Morris Companies, Inc. ("Philip Morris") and the surviving spouse of Lillian D. Beard, James R. Beard. Plaintiffs sought to prohibit the distribution of proceeds of Lillian Beard's account with a Philip Morris deferred profit sharing plan to the surviving spouse. On appeal, the issues are (1) whether the surviving spouse is entitled to the proceeds of the plan under 29 U.S.C. § 1055(c)(2)(A)(i), (2) whether § 392.090(2) of the Kentucky Revised Statutes is preempted by ERISA, and (3) whether the plan administrator satisfied the notice requirements of the deferred profit sharing plan pursuant to 26 CFR § 1.401(a)–11(c)(3). For the reasons that follow, we affirm.

## I.

### A.

During her employment with Philip Morris, Lillian D. Beard participated in the company's deferred profit sharing plan. In 1980, she designated her three children as beneficiaries. As beneficiaries, the children, at that time, were entitled to receive any distribution of the plan which was payable upon Beard's death. Beard's husband, James R. Beard, was not named as a beneficiary and thus had no interest in the proceeds.

In 1984, Congress enacted the Retirement Equity Act of 1984, Pub.L. 98–397, 98 Stat. 1426 ("REACT"). Among other things, REACT amended the Employee Retirement Income Security Act of 1974 ("ERISA") and the Internal Revenue Code of 1954 by requiring plans, such as Philip Morris' deferred profit sharing plan, to provide that the surviving spouse of a participant is to receive the benefits under the plan following the death of the participant, unless such benefits are specifically waived by the surviving spouse in a manner prescribed by law; i.e., "... the spouse's [written] consent acknowledges the effect of such election [waiver] and is witnessed by a plan representative or a notary public...." 29 U.S.C. § 1055(c)(2)(A)(i). Philip Morris subsequently amended its plan to conform with REACT.[1]

In April 1991, Lillian D. Beard died. She was survived by her husband and her three children. Because James R. Beard at no time waived his right to the benefits of the plan, he alone became entitled to the proceeds, which totalled $101,829.41.

### B.

Vernal L. Moore, executrix of the estate of Lillian D. Beard, and one of Beard's daughters, Gerina D. Whethers, filed an action in a Kentucky county court seeking a temporary injunction prohibiting the distribution of the proceeds to James R. Beard and a declaratory judgment of the rights of the parties as to the proceeds of the plan. Named as defendants were Philip Morris and James R. Beard. The Kentucky court granted the temporary injunction. However, Philip Morris removed the case to the district court pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1331.

Defendants subsequently filed a motion for summary judgment under Federal Rule of Civil Procedure 56(c). They argued that under the plain language of REACT, a surviving spouse is automatically entitled to the proceeds of an ERISA plan unless the surviving spouse waives his right. Because James Beard did not grant his consent, defendants argued, plaintiffs had no right to a judgment prohibiting Philip Morris from distributing the proceeds to him.

In support of their motion, defendants submitted the affidavit of Karen C. Cornett, the Employee Benefits Supervisor for Philip Morris' Louisville operations, who was responsible for the administration of employee benefits such as the deferred profit sharing plan. Cornett stated that the files of Philip Morris did not contain a form executed by James R. Beard waiving his right to the proceeds of the plan. Cornett also stated that in March of 1989, she assisted Lillian Beard in obtaining a loan against her account in the plan. According to the affidavit, Cornett informed Beard that REACT required Beard to obtain the written consent of her husband before being able to obtain the loan and that REACT also made her husband the automatic beneficiary under the plan unless her husband waived his right by a written and notarized document. Moreover, attached to Cornett's affidavit were six documents prepared by Philip Morris: a question

---

1. Effective January 1, 1988, Philip Morris' deferred profit sharing plan defined "beneficiary" as follows:

    (1) the Spouse of the Participant, or (2) the person or persons (including the estate of the Participant) designated by the Participant to receive distribution of all or a portion of the Current Value of his Accounts in the event of death and (i) his Spouse consents, in writing before a notary public or an authorized representative of the Committee, to such designation, or (ii) the Committee has determined that the consent of the Participant's Spouse need not be obtained (A) because the Spouse cannot be located, or (B) as a result of such circumstances as the Secretary of the Treasury may prescribe by regulations.
    J.A. 92.

and answer brochure, an informational booklet, a letter, a prospectus, a plant notice, and an excerpt from a company newspaper. Each of the documents informed plan participants about the changes in beneficiary status resulting from REACT. Cornett explained in her affidavit that each of the documents, other than the plant posting, was either distributed to or mailed to participants of the plan, including Lillian D. Beard.

Plaintiffs filed a response to defendants' motion for summary judgment. They contended that under Kentucky law, James R. Beard was not entitled to the proceeds of the plan because of his allegedly adulterous conduct. Plaintiffs also argued that Philip Morris failed to satisfy the notice requirements of 29 U.S.C. § 1022 with respect to the effects REACT had upon the status of beneficiaries under the plan. In support of their notice argument, plaintiff included three affidavits: one of Gerry Ellis, an attorney representing Lillian D. Beard's estate in a Jefferson County, Kentucky, Probate Court; another of Gerina D. Whethers; and the third of Vernal L. Moore. In his affidavit, Ellis stated that although in 1990 Lillian D. Beard "began to suspect that there might be some complications" with the beneficiary status of the plan, "she was not aware that her children could be totally excluded as beneficiaries." J.A. 88. Ellis also stated that he was informed by Cornett that "Philip Morris had done a poor job of explaining and communicating the spousal provisions of the profit sharing plan to its employees." J.A. 89. According to Whethers' affidavit, Beard was unaware that her interest in the plan would not go to her three daughters in accordance with the beneficiary designation made in 1980. Moore stated in her affidavit that Beard "had never gotten any notice or been informed by Philip Morris that her wishes [that her three children receive the proceeds of the plan] would not be honored." J.A. 96.

Defendants' motion was referred to a magistrate pursuant to 28 U.S.C. § 636(b)(1)(A) & (B). After review of the submitted evidence, the magistrate recommended that the motion for summary judgment be granted. Construing the plain language of the statute, the magistrate concluded that where a participant in a qualifying plan has designated a beneficiary other than his or her spouse without the written consent of that spouse, the participant's spouse is entitled to the deceased participant's funds regardless of the beneficiary designation. The magistrate also rejected plaintiffs' argument that under § 392.090(2) of the Kentucky Revised Statutes, James R. Beard was precluded from collecting the proceeds of the plan, concluding that the state law was preempted under ERISA. Lastly, the magistrate concluded that Philip Morris did not fail to satisfy ERISA's notice requirements set forth in 29 U.S.C. § 1022. The district court accepted the recommendation of the magistrate and granted defendants' motion. This timely appeal followed.

## II.

■ We review a district court's grant of summary judgment pursuant to Fed. R.Civ.P. 56(c) de novo, using the same test utilized by the district court. *See Faughender v. City of North Olmsted, Ohio*, 927 F.2d 909, 911 (6th Cir.1991). Summary judgment is proper if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988). The party moving for summary judgment bears the initial burden and need not support its motion with affidavits or other materials *"negating"* the opponent's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Adock v. Firestone Tire & Rubber Co.*, 822 F.2d 623, 626 (6th Cir. 1987). Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2554.

■ Once the moving party has met its burden of production, the nonmoving party then must go beyond the pleadings and by affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct.

at 2553. Thus, the nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). It must present significant probative evidence in support of its complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

■ Upon review of all the evidence relevant to the motion for summary judgment, a district court should, after viewing the evidence in a light most favorable to the nonmoving party, determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2511–12; *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir.1991), *cert. denied*, ⸺ U.S. ⸺, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511; *Stein v. National City Bank*, 942 F.2d 1062, 1064 (6th Cir.1991).

### A.

■ In order to rectify certain inequities arising under ERISA regulated plans, REACT amended ERISA by, among other things, "providing for 'automatic survivor benefits to the spouses of vested [ERISA plan] participants.'" *Heisler v. Jeep Corp.– UAW Retirement Income Plan*, 807 F.2d 505, 509 (6th Cir.1986) (quoting S.Rep. No. 575, 98th Cong., 2d Sess. 12, *reprinted in* 1984 U.S.Code Cong. & Admin. News 2547, 2558). REACT established the following criteria for waiver of benefits by the participant spouse:

> Each plan shall provide that an election [by a plan participant to waive plan benefits] shall not take effect unless—
>
> (A)(i) the spouse of the participant consents in writing to such election, (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse), and (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public....

29 U.S.C. § 1055(c)(2)(A)(i); *see also* 26 U.S.C. § 417(a)(2).

In this case, although Lillian D. Beard designated her three children as beneficiaries of the Philip Morris deferred profit sharing plan, James R. Beard, Lillian's husband, never gave his consent to that election. Thus, given the clear and unambiguous terms of the statute, we conclude that only he is entitled to the benefits of the plan. *See Hurwitz v. Sher*, 982 F.2d 778, 781 (2d Cir.1992) (applying plain meaning of REACT in holding that surviving spouse entitled to proceeds of ERISA plan absent properly executed consent), *cert. denied*, ⸺ U.S. ⸺, 113 S.Ct. 2345, 124 L.Ed.2d 255 (1993); *Donohue v. Shell Provident Fund*, 656 F.Supp. 905, 908–09 (S.D.Tex.1987) (same); *Binks Mfg. Co. v. Casaletto–Burns*, 657 F.Supp. 668, 671 (N.D.Ill.1986) (same), *aff'd in part and dismissed in part*, 822 F.2d 1090 (7th Cir. June 15, 1987).

### B.

In the district court, plaintiffs sought to avoid the result mandated by REACT on the grounds that state law governed the disposition of the proceeds. They argued that under § 392.090(2) of the Kentucky Revised Statutes, which provides that if a spouse voluntarily leaves the other and lives in adultery, "the offending party forfeits all right and interest in and to the property and estate of the other, unless they afterward become reconciled and live together as husband and wife," James R. Beard forfeited all his

rights to the proceeds as a result of his allegedly adulterous conduct. The district court rejected this argument, finding that ERISA preempted any effect K.R.S. § 392.-090(2) might have had on the allocation of the proceeds. On appeal, plaintiffs argue that the district court erred in this respect, contending that ERISA does not preempt state laws dealing with domestic issues.

■ We decline to adopt plaintiffs' position that as a general rule, laws regulating domestic issues are not preempted by ERISA. ERISA does not preempt state laws based upon their general content. *See Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 137, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990). Rather, the scope of ERISA's preemption clause is governed by the relationship the state law has to an employee benefit plan. Specifically, the preemption clause provides that "the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Thus, whether K.R.S. § 392.090(2) is preempted by ERISA depends not on the nature of the law itself but instead on whether K.R.S. § 392.090(2) "relate[s] to" an employee benefit plan, which in this case is Philip Morris' deferred profit sharing plan.

As consistently noted by the Supreme Court, "the words 'relate to' should be construed expansively: '[a] law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 8, 107 S.Ct. 2211, 2215, 96 L.Ed.2d 1 (1987) (quoting *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–900, 77 L.Ed.2d 490 (1983)). "Under this 'broad common-sense meaning,' a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll–Rand Co.*, 498 U.S. at 139, 111 S.Ct. at 483 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987)). Despite the broad scope of the preemption clause, however, the Court has also cautioned that "[s]ome state actions

may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21.

■ We conclude that K.R.S. § 392.090(2) is not the type of law that affects Philip Morris' plan in too tenuous a manner as to fall outside ERISA's preemption clause. The Kentucky law has obvious administrative effects on employee benefit plans. Under K.R.S. § 392.090(2), a surviving spouse forfeits his rights in the deceased spouse's property if he "voluntarily leaves the other and lives in adultery ... unless they afterward become reconciled and live together as husband and wife." Determination of whether the circumstances in a given case warrant forfeiture are questions of state law and the delay caused in ascertaining the effect of K.R.S. § 392.090(2) will necessarily prolong the time the allocation of proceeds under the beneficiary provision of the plan is made. Moreover, in contrast to cases such as *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 147 (2d Cir.), *cert. denied*, 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989), wherein the court held that Connecticut's escheat law was not preempted by ERISA because it had no effect on the employer's "original determination of an employee's eligibility for benefits," K.R.S. § 392.090(2) does affect who is eligible for plan benefits. If a surviving spouse was found to have forfeited his rights under § 392.090(2), it is arguable that he would not be entitled to the proceeds under the plan.

■ Our conclusion is supported by the purposes of the preemption clause. Statements made by ERISA's sponsors "reflect recognition of the administrative realities of employee benefit plans." *Fort Halifax Packing Co.*, 482 U.S. at 9, 107 S.Ct. at 2216. Because of the myriad tasks of a plan administrator, such as determining eligibility of claimants and making disbursements, Congress believed that "[t]he most efficient way to meet these responsibilities is to establish a uniform administrative scheme, which provides a set of standard procedures to guide the processing of claims and disbursements of benefits." *Id.* To allow K.R.S. § 392.-090(2) to alter the allocation of benefits, how-

ever, would not provide employers the advantages of a uniform system but rather would subject them to various regulations that may differ state by state. It was for this reason that ERISA's preemption clause was enacted. *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981) (preemption clause intended to "establish pension plan regulation as exclusively a federal concern"). We thus conclude that K.R.S. § 392.090(2) is preempted by ERISA.

### C.

▮▮▮ Plaintiffs also argued in the district court that factual issues existed as to whether Philip Morris satisfied the notice requirements of ERISA set forth in 29 U.S.C. § 1022, thus precluding the entry of summary judgment. The district court rejected this argument, concluding that Philip Morris "did all it could to notify its employees of the changes brought by the Act." J.A. 111. On appeal, plaintiffs no longer rely on the notice provisions contained in 29 U.S.C. § 1022. Rather, plaintiffs argue that factual issues exist as to whether Philip Morris failed to satisfy the notice provisions contained in 26 CFR § 1.401(a)–11(c)(3). Ordinarily, we decline to address arguments not raised in the district court. *Bannert v. American Can Co.*, 525 F.2d 104, 111 (6th Cir.1975), *cert. denied*, 426 U.S. 942, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976). However, we have varied from this position where, as in this case, "the issue presents only a question of law." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 244 (6th Cir.1991).

The regulation relied upon by plaintiffs, 26 CFR § 1.401(a)–11(c)(3), provides notice requirements for plan administrators. Specifically, it requires plan administrators of plans such as the one at issue in this case to provide to plan participants the following information in written nontechnical language: "a general description or explanation of the qualified joint and survivor annuity, the circumstances in which it will be provided unless the participant has elected not to have benefits provided in that form, ... the availability of such election[, and] [a] general explanation of the relative financial effect on a

participant's annuity of either or both elections, as the case may be." 26 CFR § 1.401(a)–11(c)(3)(i)(A) & (C). The regulation further provides that the methods used to provide the information may include posting, mail, or personal delivery. 26 CFR § 1.401(a)–11(c)(3)(ii).

▮▮▮ In this case, Philip Morris provided the necessary information to Lillian D. Beard on six separate occasions. In March 1985, Philip Morris mailed a company newspaper to each employee's home address, which provided that "[i]f you wish to name someone other than your spouse as the beneficiary of one or both of the plans, you must have your spouse's *written and notarized consent.*" J.A. 70 (emphasis in the original). Also in March 1985, Philip Morris mailed to plan participants a letter signed by the director of employee relations, which stated "[u]nder the new law, your *spouse* is now *automatically* the beneficiary of your Deferred Profit Sharing ... accounts.... If you wish to name someone other than your spouse as beneficiary under one or both of these Plans, you may do so, but only with your spouse's *written and notarized* consent." J.A. 50 (emphasis in the original). From late April through early May 1985, Philip Morris posted a notice at the plant where Beard worked, which stated that "[i]f you wish to name someone other than your spouse as the beneficiary of one or both plans, you must have your spouse's written and notarized consent." J.A. 69. In July 1988, Philip Morris provided a question and answer brochure, which stated that "[i]f you are married and wish to name someone other than your spouse as your beneficiary, your spouse must complete a 'spousal waiver' which will need to be witnessed and notarized by a licensed notary public." J.A. 33. In August 1988, Philip Morris distributed a description of the plan which included the following summary: "If you are married, your beneficiary under the Plan, unless you designate otherwise, is automatically your spouse. If you wish to name someone other than your spouse, your spouse must consent, and her signature on the Beneficiary Designation form must be notarized." J.A. 38. In June 1989, Philip Morris mailed a corporate prospectus, which provided that

"[a] married Participant's beneficiary is his surviving spouse, unless the spouse has consented in writing before a notary public...." J.A. 61. Each of these documents conveyed the requisite information by an authorized means and was written in nontechnical language. We thus conclude that there is no genuine issue of fact as to whether Philip Morris satisfied the notice requirements set forth in 26 CFR § 1.401(a)–11(c)(3).

Plaintiffs argue, however, that summary judgment is inappropriate because "there is no proof" that Beard received any of the information. Plaintiffs, however, fail to provide any evidence, let alone significant probative evidence, to support its argument. Such conclusory assertions are not sufficient to show a genuine issue of fact necessary for the denial of summary judgment. Plaintiffs further argue that factual issues exist as to whether Karen Cornett, the Employee Benefits Supervisor for Philip Morris' Louisville operations, thoroughly explained to Lillian D. Beard at the time Beard sought to obtain a loan against her profit sharing account about the effects REACT had upon her beneficiary designation. While a factual dispute may exist on this point, it is irrelevant for purposes of summary judgment in this case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Here, Philip Morris satisfied its obligations under 26 CFR § 1.401(a)–11(c)(3) by other means.[2]

## III.

For the reasons stated, the district court's grant of summary judgment is AFFIRMED.

---

2. Plaintiffs also argue that James R. Beard holds the proceeds of the plan in a constructive trust for the benefit of Lillian Beard's children. This issue was never raised in the district court. Because resolution of this question necessitates a

" 'new or amplified factual determination,' " we decline to address it. *See Taft Broadcasting*, 929 F.2d at 244 (quoting *Black Motor Co. v. Commissioner*, 125 F.2d 977, 980 (6th Cir.1942)).