**M.W., By and Through Her Next Friend, Her Parents, T.W. & D.W. Plaintiff**

v.

**MADISON COUNTY BOARD OF EDUCATION, et. al. Defendants**

**No. CIV.A. 02–110–KSF.**

United States District Court, E.D. Kentucky at Lexington.

May 7, 2003.

Edward E. Dove, Michael Shea Chaney, Lexington, for M.W., by and through her next friend, her parents, T.W. and D.W., nfr T.W., nfr D.W., Plaintiffs.

John Cato Fogle, III, Chenoweth Law Office, Robert L. Chenoweth, Chenoweth Law Office, Frankfort, Dave Whalin, Landrum & Shouse, Jennifer A. Peterson, Landrum & Shouse, Louisville, for Madison County, Kentucky, Board of Education, Glenn Marshall, In his Individual Capacity, Hubert Broaddus, In his Individual Capacity, Richmond Police Department, Sued as "City of Richmond Police Department", Charles Debord, In his Individual Capacity, Mark Wiles, Individually, Defendants.

## OPINION & ORDER

FORESTER, Chief Judge.

This matter is before the Court upon the motion for summary judgment filed by the defendants Board of Education, Marshall, and Broaddus [DE # 13]. The motion is ripe for review.

### I. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

■ At the time relevant to the complaint, the minor plaintiff was a fifteen-year-old child enrolled in the ninth grade at Madison Central High School for the 2000–01 school year. The plaintiff has been identified by the Madison County schools as a "special needs student" because of an I.Q. score of sixty and a seizure disorder. It is undisputed that the plaintiff has a secondary seizure disorder. However, there is no evidence in the record that the plaintiff was suffering from a seizure on February 5, 2001.[1]

---

1. The plaintiff's seizure condition is a red-herring in this case. In response to the defendants' motion for summary judgment, plaintiff fails to cite to any evidence tending to prove that she actually suffered a seizure at the relevant time on February 5, 2001. "The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1480 (6th Cir.1989). Regardless, the record establishes that when suffering a seizure the plaintiff is unable to hear or remember events that oc-

curred during the seizure. However, even if plaintiff claimed that she had a seizure on February 5, this belief is contradicted by her statements that she remembers events happening during the purported seizure, i.e., the questioning by Broaddus that led to this lawsuit. A summary judgment motion cannot be defeated by offering speculative beliefs that contradict earlier deposition testimony. See Gagne v. Northwestern Nat'l Ins. Co., 881 F.2d 309, 315 (6th Cir.1989) overruled on other grounds by Kline v. Tennessee Valley Authority, 128 F.3d 337 (6th Cir.1997).

On February 5, 2001, the plaintiff arrived at school late, received a tardy slip and proceeded to her first class, ROTC, which was already underway. The ROTC class included a physical education-like component. The plaintiff had failed to bring appropriate gym clothes to change into, and thus remained in her regular clothing for the physical education component of the class. Upon observation of plaintiff's attire, Sergeant Major Frank Myers, the instructor for the physical education component of ROTC, advised plaintiff that she was in violation of the school's general dress code and that she should report to the principal's office. The plaintiff has acknowledged that her shirt violated the dress code in that it was not long enough to be tucked into her lower garments and showed portions of her stomach. Plaintiff left the gym willingly, and Myers escorted her to the principal's office. At some time during the walk to the administrative offices, the plaintiff asserts that she became upset.

At the principal's office, plaintiff and Myers first met with Assistant Principal Gary Fritz in the hallway outside the main office. Defendant principal Hubert Broaddus then came upon the scene at which time Myers returned to the gymnasium. Broaddus did not ask Myers the plaintiff's name or whether she was a student in his class. Broaddus has testified that Myers performed roles other than a class instructor throughout the day and it was fairly typical for him to escort individuals to the office who were not students in his class, such as individuals in the hallway, parking lot or lunch room.

After Myers left the office area, Broaddus asked plaintiff on multiple occasions to identify herself. The plaintiff failed to state her name or respond to the questioning, and was not wearing a student I.D. tag at the time she was escorted to the office. Madison Central students typically wear student I.D. tags from their necks; however, these tags are removed during gym class. Broaddus was due for a meeting at another school in the district and failed to make any other attempt to identify plaintiff. Instead, Broaddus advised defendant Mark Wiles, a Richmond city police officer assigned to regular duty at the Madison Central campus, to take steps to determine plaintiff's identity. Broaddus indicated to Wiles that the plaintiff would not identify herself and that he was uncertain whether she was in fact a student at Madison Central, due in part to the absence of the I.D. tag. According to the plaintiff, Wiles had happened to appear by the principal's office at the time, and Broaddus left the building after turning the plaintiff over to Wiles' custody.

Wiles proceeded to ask plaintiff her identity, and when she remained silent, he escorted her from the building and took her to the Richmond Police station, placing her in a secured detention room until her parents arrived. There is no allegation that Broaddus asked Wiles to remove plaintiff from the building or to otherwise take any specific steps to determine her identification. Moreover, Wiles is not alleged to have been advised by anyone of plaintiff's dress code violation. The school district defendants did not have any further interaction with plaintiff until she was returned to the school by her parents later in the day on February 5, 2001. Plaintiff alleges that after she was removed from detention, her parents went to the school to speak with Broaddus who responded in a rude and abrasive manner. The plaintiff claims that as a result of being forcibly removed from school, she has suffered emotional harm, including severe depression, and had no effective choice but to leave Madison Central and enroll in Madison Southern High School where she still attends.

This action was initially filed in Madison Circuit Court on February 1, 2002, and removed to this Court on March 6, 2002. The plaintiff asserts the following causes of action: 42 U.S.C. § 1983 claims for violation of her rights under the Fourth and Fourteenth Amendments; violation of Kentucky Revised Statute 344.150 for discrimination by a public accommodation based on sex and disability; violation of "Article 2" of the Kentucky Constitution; wrongful expulsion; false imprisonment; and intentional infliction of emotional distress.

The defendant Madison County Board of Education ("Board") is a state agency and its employees are employees of the Commonwealth of Kentucky. Defendant Wiles at all times relevant to this litigation was employed by the City of Richmond Police Department ("Police Department") and was assigned to duty at the Madison Central campus. The Board did not employ Wiles, nor pay any portion of his salary. Defendant Glenn Marshall served as superintendent of the Board during the relevant time period alleged in the complaint. There is no allegation that Marshall ever personally came into contact with plaintiff or otherwise played any active role in the events of February 5, 2001. Likewise, there is no allegation that Broaddus' purported actions of February 5 were the result of any directives, policies, procedures, or customs established by the Board.

## II. DISCUSSION

### A. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir.1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Companies, Inc.,* 8 F.3d 335, 340 (6th Cir.1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. 2505. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted).

### B. Analysis

#### 1. Federal claims in defendants' official capacity

██ The defendants, by way of a footnote, assert the Eleventh Amendment as a

basis of immunity from plaintiff's federal claims. In accordance with well-settled precedent within the Eastern District of Kentucky, the Court rejects the defendants' Eleventh Amendment argument by finding that the Madison County Board of Education is a local political subdivision, and not an arm of the state.[2] *See, e.g., Ghassomians v. Ashland Independent School Dist.*, 55 F.Supp.2d 675 (E.D.Ky. 1998); *Doe v. Knox County Bd. of Educ.*, 918 F.Supp. 181 (E.D.Ky.1996); *Tolliver v. Harlan County Bd. of Educ.*, 887 F.Supp. 144 (E.D.Ky.1995); *Blackburn v. Floyd County Bd. of Educ.*, 749 F.Supp. 159 (E.D.Ky.1990).

■ Defendants next contend that "municipal immunity" shields the Board and the named school district defendants from official capacity liability. Pursuant to *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the plaintiff must establish that the allegedly unconstitutional acts were the official policy or custom of the Board. Allegations based upon *respondeat superior* are insufficient as a matter of law to support a cause of action under Section 1983. *See, e.g., Board of the County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

Plaintiff has failed to identify any evidence that the Board or Superintendent Marshall were aware of Principal Broaddus' actions on February 5, 2001. Consequently, plaintiff is unable to show that Broaddus' actions were taken pursuant to official Board policy. The nonmovant (here the plaintiff) may not rely on subjective beliefs to show a genuine dispute. *See e.g., Carpenter v. Fed. Nat'l Mort. Ass'n,*

174 F.3d 231, 236–37 (D.C.Cir.) *cert. denied,* 528 U.S. 876, 120 S.Ct. 184, 145 L.Ed.2d 155 (1999). The nonmovant also may not defeat summary judgment by conclusory responses. *See e.g., Bickerstaff v. Vassar College*, 196 F.3d 435, 451–52 (2d Cir.1999) *cert denied,* 530 U.S. 1242, 120 S.Ct. 2688, 147 L.Ed.2d 960 (2000). The facts identified by the plaintiff fail to go beyond the *respondeat superior* liability insufficient under Section 1983.

■ In the alternative to liability based on official policy, "[a]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Monell,* 436 U.S. at 690–91, 98 S.Ct. 2018. The only "evidence" on this element cited by the plaintiff in opposition to the motion for summary judgment is defendant Wiles' acknowledgment that he routinely removed children from Madison Central for many reasons. However, the portion of Wiles' testimony identified by plaintiff does not speak to the involvement of Marshall or Broaddus. Likewise, Wiles's identified testimony merely states in conclusory fashion that he has removed children from the school, without regard to the specific circumstances of such removal.

■ Obviously, it is not a violation of the Constitution every time a school safety officer removes a child from school; instead the analysis is fact-specific. As stated, the nonmovant may not defeat summary judgment by conclusory responses. *See e.g., Bickerstaff,* 196 F.3d at 451–52,

**2.** Contrary to the defendants' implications, *Yanero v. Davis,* 65 S.W.3d 510 (Ky.2001), neither alters the Eleventh Amendment analysis, nor the above conclusion rejecting the defendants' argument, as the status of a governmental entity for Eleventh Amendment purposes is a question of federal law. *Hall v. Medical College of Ohio at Toledo,* 742 F.2d 299, 304 (6th Cir.1984).

*cert denied,* 530 U.S. 1242, 120 S.Ct. 2688, 147 L.Ed.2d 960 (2000). Accordingly, the motions of the Board, Marshall, and Broaddus are well-taken to the extent these defendants in their official capacities are entitled to immunity based upon the absence of a genuine issue of material fact concerning whether the alleged unconstitutional actions were taken pursuant to an official policy or custom of the Board.[3]

### 2. Federal claims in defendants' individual capacities

▌ Defendants Marshall and Broaddus raise qualified immunity as a defense to the federal law claims brought against them in their individual capacities. Qualified immunity is an affirmative defense that shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (citations omitted). Therefore, in order to withstand a motion for summary judgment based on the defense of qualified immunity, the plaintiff must first show from the facts alleged that the government official "violated a clearly established statutory or constitutional right." *Id.*

▌ A court in the Sixth Circuit undertaking a qualified immunity analysis must first determine whether the plaintiff has shown a violation of a constitutionally protected right; if so, the court must examine whether the right was clearly estab-

lished. *Brennan v. Township of Northville,* 78 F.3d 1152, 1154 (6th Cir.1996). The right allegedly violated cannot be asserted at a high level of generality, but instead, "must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 639–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). To overcome qualified immunity, the right allegedly violated must be so clear that any reasonable public official in the defendant's position would understand that his conduct violated the right: "if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). If the plaintiff is unable to show the violation of a constitutionally protected right, then obviously it is unnecessary for the Court to proceed to the second step of the qualified immunity analysis. *See Brennan,* 78 F.3d at 1154.

▌ Assuming the plaintiff has shown violation of a constitutionally protected right, there are two ways in which a plaintiff seeking to overcome the bar of qualified immunity can show that a right was clearly established in the law at the time the alleged violation occurred. First, "a district court within this circuit must be able to 'find binding precedent from the Supreme Court, the Sixth Circuit,

---

**3.** The defendants' argument based upon 20 U.S.C. § 6731 is rejected because that Act provides liability protection for teachers acting in conformity with federal, state, and local law. In addition, the Act does not insulate defendants from liability for alleged gross negligence and flagrant indifference to the rights of a plaintiff as alleged in this case. Similarly, the defendants' argument that plaintiff has failed to exhaust remedies as

required by 20 U.S.C. § 1415(1) is rejected because plaintiff is not seeking relief under the IDEA. Based upon the plaintiff's claims, which have no bearing on the IDEA, exhaustion would be futile and is thus not required. *See, e.g., Covington v. Knox County School System,* 205 F.3d 912, 917 (6th Cir.2000) (citing *Plasencia v. California,* 29 F.Supp.2d 1145, 1150 (C.D.Cal.1998)).

or...itself'" that directly establishes the conduct in question as a violation of the plaintiff's rights. *Summar v. Bennett,* 157 F.3d 1054, 1058 (6th Cir.1998) (citations omitted). If no binding precedent is "directly on point," the court may still find a clearly established right if it can discern a generally applicable principle from either binding or persuasive authorities whose "specific application to the relevant controversy" is "so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional." *Id.; accord Cagle v. Gilley,* 957 F.2d 1347, 1348 (6th Cir.1992).

█ Here, the plaintiff argues that since the school was aware that she was diagnosed with a seizure disorder, it was clearly unreasonable under the Fourth Amendment for Broaddus to leave her with Wiles and not take further reasonable steps to ascertain her identity. The plaintiff does not make the claim that she was searched in violation of the Fourth Amendment; instead, she claims that the conduct of Broaddus and Marshall constituted an unlawful seizure.

█ It is beyond dispute that the plaintiff was in fact subjectively "seized" for Fourth Amendment purposes. However, the "reasonableness element" of the Fourth Amendment analysis in the school context must take into consideration the broad disciplinary powers of school officials and the limited liberty rights of students while in the school. *See, e.g., Vernonia School Dist. 47J v. Acton,* 515 U.S. 646, 654, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) *New Jersey v. T.L.O.* 469 U.S. 325, 341, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985); *Horton v. Goose Creek Ind. Sch. Dist.,* 690 F.2d 470, 480 (5th Cir.1982); *Stockton v. City of Freeport, Texas,* 147 F.Supp.2d 642 (S.D.Tex.2001).

Here, even considering the Fourth Amendment analysis without regard to the more limited rights found in a school setting, the plaintiff's allegations fail to establish that Broaddus' conduct was unreasonable. It is undisputed that Broaddus was unaware of plaintiff's identity and that plaintiff was unwilling or unable to provide her identity. Likewise, it is undisputed that Broaddus merely turned the plaintiff over to Wiles in order for Wiles to ascertain her identity. There is no allegation that Broaddus directed or even intended for Wiles to take the plaintiff to the police station. Moreover, it is undisputed that Broaddus contemplated the possibility that the plaintiff was not a student and was merely brought to his office as a trespasser on the school grounds. The Court is unable to find that the actions of Broaddus in briefly detaining plaintiff in this case in order to ascertain her identity violate the Fourth Amendment. *Cf. Terry v. Ohio,* 392 U.S. 1, 20–21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Palomino,* 100 F.3d 446, 449 (6th Cir.1996). Likewise, nor did Broaddus violate the Fourth Amendment by his decision to request the assistance of Wiles when his efforts to determine plaintiff's identify failed.

█ Regardless, even if, in hindsight, the conduct of Broaddus violated the Fourth Amendment, the plaintiff's rights in this context were certainly not clearly established by precedent or by a generally applicable principle whose *specific application* to this controversy was *clearly foreshadowed* by direct authority. *See, Summar* 157 F.3d at 1058. The plaintiff acknowledges the absence of authority holding that the actions of the principal in this case violated the Fourth Amendment: "The Court has not yet seemed to address an issue of whether it is reasonable for a school official to allow a child to be taken into custody because she can not articulate her name when less intrusive measures

are available." Plaintiff's Response to defendants' Motion for Summary Judgment, p. 8. Accordingly, the defendants are entitled to qualified immunity in regard to plaintiff's Fourth Amendment claim.[4]

 The plaintiff also alleges Fourteenth Amendment equal protection and due process claims, but has omitted discussion of these claims in response to defendants' motion for summary judgment. Regardless, as for the equal protection claim, it is clear that plaintiff has no evidence of a nefarious purpose to discriminate against her based on her membership in a definable class. *See Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir.1982); *Higginbottom ex rel. Davis v. Keithley*, 103 F.Supp.2d 1075 (S.D.In.1999). Accordingly, even if plaintiff's handicap were at issue in this case, pursuant to the Fourth Amendment balancing identified above, the equal protection claim must be dismissed based upon rational basis review. *Cf. City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Doe v. Heck*, 327 F.3d 492, 527 (7th Cir.2003) (citing *Darryl H. v. Coler*, 801 F.2d 893, 901–02 n. 7 (7th Cir. 1986)) (noting that the Fourth Amendment analysis and the Fourteenth Amendment due process analysis are essentially synonymous in this context). Turning to the plaintiff's due process claim, just as with the plaintiff's other federal claims, defendants Broaddus and Marshall are entitled to qualified immunity based upon the objective reasonableness of their actions. *See Doe*, 327 F.3d 492, 527.

### 3. State Law Claims[5]

 The defendant Board is entitled to governmental immunity as an agency of the Commonwealth of Kentucky. *See Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2002). It is undisputed that the Board's actions regarding the claims alleged in the complaint are purely in the performance of a governmental function. Similarly, the claims against Marshall shall be dismissed because public officers are responsible only for their own misfeasance and negligence, not for acts of those employed by them if they have employed persons of suitable skill.[6] *See id.* at 528.

 Turning to the allegations against Broaddus, it is clear that his conduct in this case involves discretionary functions. The Kentucky Supreme Court has recently defined discretionary functions as "those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment" as opposed to ministerial acts requiring "obedience to the orders of others." *Id.* at 522. Here, Broaddus is alleged to have requested the assistance of Wiles to ascertain the plaintiff's identity. The plaintiff alleges that the basis for this action was plaintiff's refusal to respond to Broaddus' requests to state her name; and/or plaintiff's violation of the dress code. Regardless, Broaddus, as principal, possessed the ultimate executive function at the school of enforcing the student discipline code and maintaining the safety of other students by ensuring that only authorized students were present on campus. There are no facts to support a claim that Broaddus was acting in bad faith towards the plaintiff; in

---

4. There is no allegation that Marshall participated in Broaddus' actions; thus, the above analysis applies equally to Marshall.

5. The Court declines to dismiss the supplemental state claims primarily due to efficiency concerns in light of the remaining claims

against the Police Department defendants that are the subject of a still pending summary judgment motion.

6. There are no claims sounding in negligent hiring.

fact, it is undisputed that Broaddus was unaware of plaintiff's identity. Accordingly, based upon the allegations all involving an inherently discretionary function, Broaddus is entitled to qualified "good faith" immunity. *Id.* at 529.

### III. CONCLUSION

Based upon the above analysis, the Court, being fully advised, HEREBY ORDERS

(1) The defendants' motion for summary judgment [DE # 13] is GRANTED;

(2) Plaintiff's claims against the Madison County Board of Education, Marshall, and Broaddus are DISMISSED WITH PREJUDICE.