**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0180n.06

**No. 10-6433**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

IBEW PACIFIC COAST PENSION FUND,

      **Plaintiff-Appellee,**

v.

CLETA M. LEE,

      **Defendant-Appellant,**

v.

LOIS A. LEE,

      **Defendant-Appellee.**

                                        /

```
                                   FILED
                                Feb 13, 2012
                           LEONARD GREEN, Clerk
```

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

**BEFORE:**    **BATCHELDER, Chief Judge, CLAY, and GILMAN, Circuit Judges**.

      **CLAY, Circuit Judge.** Defendant Cleta M. Lee appeals the district court's award of benefits to Defendant Lois A. Lee in this interpleader action brought by the International Brotherhood of Electrical Workers Pacific Coast Pension Fund's ("the Pension Fund"). Because the district court incorrectly decided that there were no material factual disputes and that Defendant Lois A. Lee was entitled to prevail as a matter of law, we **REVERSE** the district court's judgment and **REMAND** for further proceedings consistent with this opinion.

## STATEMENT OF FACTS

From November 1978 through December 1991, Wayne Lee was a member of the International Brotherhood of Electrical Workers and contributed to the Pension Fund. Wayne Lee married Cleta M. Lee in the state of Washington in February 1979, and the couple appear to have never divorced.

In 1992 or 1993, Wayne moved to Mississippi from Washington without Cleta in order to find a job.[1] He married Lois in that state in 1995. In February 1997, Wayne retired and applied for benefits from the Pension Fund. On his pension application, Wayne identified himself as married and named Lois as his spouse. He elected a "50% Husband-and-Wife" pension plan, under which he deferred half of his accrued pension to be paid monthly to his "spouse" after he died. Wayne and Lois both signed a statement agreeing to the date on which the annuity would commence. Wayne also attached his Mississippi marriage certificate memorializing his marriage to Lois. On his "Retired Employee's Signature and Beneficiary Form," Wayne listed Lois as the beneficiary of "any benefits which may be payable from the IBEW Pacific Coast Pension Fund as the result of [his] death."

Wayne passed away in January 2007. The Pension Fund began paying Lois a monthly pension on February 1, 2007. Cleta applied for survivor benefits from the Pension Fund later in February 2007, attaching her 1979 marriage certificate and explaining that she and Wayne had never

---

[1]We refer to Wayne, Cleta, and Lois Lee by their first names in order to avoid confusion arising from their shared last name.

divorced. The Pension Fund subsequently filed this interpleader action in the United States District Court for the Eastern District of Tennessee, the district in which Lois currently resides. *See* 28 U.S.C. § 1391(b). The Pension Fund impleaded both claimants to the disputed Pension Fund proceeds so that both would be bound by the district court's ruling, after which the district court concluded that Lois was the proper beneficiary of Wayne's pension benefits. Reasoning that the employee's pension plan documents supply the exclusive basis for settling a beneficiary dispute, the court concluded that Lois was entitled to benefits because Wayne identified Lois as both his spouse and his beneficiary in his pension application. Cleta's timely appeal followed.

## DISCUSSION

We have subject matter jurisdiction over an interpleader action initiated to determine the proper beneficiary of an employee pension benefit plan. 29 U.S.C. § 1132(a)(3)(B)(ii); *Cent. States, Se. & Sw. Areas Pension Fund v. Howell*, 227 F.3d 672, 674 n.2 (6th Cir. 2000). We review the district court's grant of summary judgment *de novo*. *Wimbush v. Wyeth*, 619 F.3d 632, 636 (6th Cir. 2010). A party is entitled to summary judgment if the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When faced with a dispute over the proper beneficiary for benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), ERISA "supplies the rule of law" for making that determination. *Metro. Life Ins. Co. v. Pressley*, 82 F.3d 126, 129–30 (6th Cir. 1996); *see* 29 U.S.C. § 1001 et seq. That rule requires, first and foremost, that an ERISA plan administrator pay

benefits "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). We have read § 1104(a)(1)(D) to lay down a "clear mandate" that a plan administrator must "follow plan documents to determine the designated beneficiary." *Metro. Life Ins. Co. v. Marsh*, 119 F.3d 415, 420 (6th Cir. 1997); *see Union Sec. Ins. Co. v. Blakeley*, 636 F.3d 275, 276 (6th Cir. 2011) ("ERISA directs that the *plan documents* determine the beneficiaries . . . and repeatedly underscores the primacy of the written plan."). Thus, we settle any question regarding the proper beneficiary of a pension plan according to the plan documents, so long as the documents provide "a workable means" of settling the dispute. *Id.*

Application of these rules to Wayne's survivor benefits requires the Pension Plan to pay benefits to Wayne's legal spouse. According to the plan documents, Wayne's selection of a "50% Husband-and-Wife" pension guaranteed Wayne's wife a lifetime pension starting after his death. The plan documents define a "spouse" as "a person to whom a Participant is legally married." Consistent with 29 U.S.C. § 1055(c)(2)(A), the documents permit the participant and his spouse to waive joint and survivor benefits only if the spouse consents to the waiver in writing.[2] Hence, the

---

[2]Section 1055(c)(2)(A) allows a participant to waive the joint and survivor annuity form of benefit only if:

> (i) the spouse of the participant consents in writing to such election, (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse), and (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public.

Pension Plan must pay spousal benefits to Wayne's legal spouse in order to comply with ERISA's "clear mandate that plan administrators follow plan documents to determine the designated beneficiary." *Marsh*, 119 F.3d at 420.

Wayne identified Lois as his spouse, but the validity of that designation appears to be incorrect. Mississippi, the state in which Wayne and Lois married, observes a presumption in favor of the validity of a successive marriage, but that presumption may be overcome with evidence that the first marriage was not dissolved by divorce or annulment. *Dale Polk Const. Co. v. White*, 287 So.2d 278, 279 (Miss. 1973); *United Timber & Lumber Co. v. Alleged Dependents of Hill*, 84 So.2d 921, 924 (Miss. 1956). Washington and Tennessee maintain the same rule.[3] Wash. Rev. Code § 26.04.020(1)(a); *Seizer v. Sessions*, 915 P.2d 553, 559 n.22 (Wash. Ct. App. 1996), *rev'd on other grounds*, 940 P.2d 261 (Wash. 1997); *Guzman v. Alvares*, 205 S.W.3d 375, 381 (Tenn. 2006). Relying on Wayne's designation of Lois as his spousal beneficiary, the district court did not determine whether the marriage between Wayne and Cleta was dissolved by divorce. From the record it appears likely that their marriage was not, though we leave that question for the district court to answer after appropriate inquiry. If it was not dissolved by divorce or annulment, then Cleta

---

[3]In *DaimlerChrysler Corp. HealthCare Benefits Plan v. Durden*, 448 F.3d 918 (6th Cir. 2006), we explained that a federal court looks to § 283 of the Restatement (Second) of Conflict of Laws to decide "the law applicable to determining the validity of a marriage," where a dispute over spousal benefits turns on the validity of a marriage. *Id.* at 925. Section 283 calls for the determination of the validity of a marriage under the law of the state that "has the most significant relationship to the spouses and the marriage." *Id.* (quoting Rest.2d Conflict of Laws § 283(1)). We leave it to the district court to determine which state has the most significant relationship to the marriage between Wayne and Cleta, though that determination is likely inconsequential since all three states observe the same governing rule.

would be Wayne's surviving spouse. And Cleta's status as Wayne's surviving spouse would take precedence over Wayne's express selection of Lois as his spouse and beneficiary, because Cleta has not waived receipt of the benefits as required by 29 U.S.C. § 1055(c)(2)(A). *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

Reliance on state law for determining Wayne's marital status does not run afoul of ERISA's preemptive effect on state laws that "relate to" an ERISA plan. 29 U.S.C. § 1144(a). Plan administrators and federal courts routinely rely on state law to identify a participant's spouse in determining the proper recipient of spousal benefits. *See DaimlerChrysler Corp. HealthCare Benefits Plan v. Durden*, 448 F.3d 918, 928 (6th Cir. 2006); *see also Robinson v. New Orleans Employers ILA AFL-CIO Pension Welfare Vacation & Holiday Funds*, 269 F. App'x 516, 518–19 (5th Cir. 2008); *Crosby v. Crosby*, 986 F.2d 79, 82 (4th Cir. 1993); *Malhiot v. So. Cal. Retail Clerks Union*, 735 F.2d 1133, 1135–36 (9th Cir. 1984). In fact, the failure to rely on the state-law determination of the identity of Wayne's lawful spouse would conflict with the plan documents' definition of spouse, which in turn would represent a failure to honor "the primacy of the written plan" governing Wayne's benefits. *Blakely*, 636 F.3d at 276. And if Cleta is Wayne's surviving spouse, then both § 1055(c)(2)(A) and the implementing provision of Wayne's plan documents prohibited him from naming a beneficiary other than Cleta without her permission by notarized writing.

The terms of § 1055(c)(2)(A) have been appropriately described as "clear and unambiguous," and the courts have applied it as such. *Moore*, 8 F.3d at 340. In *Moore*, for example, the participant

designated her children as beneficiaries of her stake in the employer's deferred profit-sharing plan, attempting to bypass her adulterous husband. *Id.* at 338–39. Based on the "clear and unambiguous" terms of § 1055(c)(2)(A), we concluded that the husband was entitled to the participant's benefits and that § 1055(c)(2)(A) preempted a state law that required an adulterous spouse to forfeit his right to proceeds of the decedent's estate. *Id.* at 340–41; *see also Hagwood v. Newton*, 282 F.3d 285, 290 (4th Cir. 2002) ("[T]he formalities required in § 1055(c) are included to protect against the risks of a spouse's unwitting waiver of [the spousal rights conferred by § 1055(a)]."). The provision's application to this case appears "clear and unambiguous" as well: simply selecting Lois as his beneficiary could not overcome the stringent requirements of § 1055(c)(2)(A), which condition Wayne's selection of Lois on Cleta's permission. *Moore*, 8 F.3d at 340.

The district court misread our cases in awarding Lois benefits. The court relied upon *McMillan v. Parrott,* 913 F.2d 310 (6th Cir. 1990), in which we awarded benefits to an ERISA participant's ex-wife, even though the ex-wife signed a divorce settlement releasing all claims against the participant. The participant, Dr. Parrott, created two pension plans in which he named his then-wife, Barbara, as beneficiary. *Id.* at 310–11. When Dr. Parrott and Barbara divorced, they entered into a joint settlement dividing their property and relinquishing "any and all" claims against one another. *Id.* at 311. Dr. Parrott did not, however, name another pension beneficiary. *Id.* Dr. Parrott married Claudia four years after divorcing Barbara, and he died shortly thereafter. *Id.* at 310. Claudia sought benefits as Dr. Parrott's wife, but the court rejected her request. *Id.* at 311.

We concluded that the release agreement between Barbara and Dr. Parrott did not waive Barbara's entitlement to Dr. Parrott's pension benefits, reasoning that ERISA preempted the state law governing the release agreement. *Id.* As we explained, ERISA's preemptive effect required that Dr. Parrott's beneficiary designation trumped any possible effect of the release agreement: "Simply put, it was Dr. Parrott's designation which controls, not Barbara's intent [by signing the release agreement]. Under the plans, we determine his intent by the designation on file at the time of his death." *Id.* at 312.

The district court read *McMillan* to support the conclusion that Wayne could name Lois as his beneficiary regardless of the validity of the couple's marriage. That reading is insufficiently tailored to a key distinction between that case and this one. *McMillan*, along with other cases from this circuit pitting an ex-spouse against a surviving spouse in connection with a benefits determination, assumed that the participant validly married the first spouse, validly ended that marriage, and then validly married the second spouse. *See Howell*, 227 F.3d at 676–77 (listing cases and explaining that "[w]e have explicitly and repeatedly held that . . . the beneficiary card controls whom the plan administrator must pay [even if] the surviving spouse had waived the right to receive benefits . . . as part of a divorce settlement"). Under this line of cases, when a participant enters into a valid second marriage after validly dissolving the first, the beneficiary designation of his ex-spouse retains effect unless the participant changes the designation or obtains a "qualified domestic relations order" altering the designation. *See* 29 U.S.C. §§ 1056(d)(3), 1144(b)(7); *Howell*, 227 F.3d at 677.

In this case, by contrast, it would appear that Wayne had only one valid marriage. It seems he had no validly wed second spouse to name as a beneficiary, and he did not obtain a qualified domestic relations order altering his designation. Cleta was likely his wife, and, if so, her permission was required for Wayne's designation of Lois as his beneficiary. *See* § 1005(c)(2)(B).

The peculiar facts of this case also explain why the district court erred in concluding it was not bound by *Durden*. 448 F.3d 918 (6th Cir. 2006). In *Durden*, we were required to make a pension benefits determination where—just as in this case—the participant married a second wife without first divorcing his first and—unlike this case—the participant failed to designate a beneficiary. *Id.* at 919–21. Applying the Restatement (Second) of Conflicts of Law to determine the validity of a choice-of-law provision in the participant's plan documents, we concluded that the participant's second marriage was invalid and that the participant's first wife was his surviving spouse entitled to pension benefits. *Id.* at 928. In dicta, we noted that the participant failed to designate a beneficiary. *See id.* at 921 ("[The participant] did not designate a beneficiary for the life insurance, and when no beneficiary is named, the surviving spouse is first in line of succession to receive the proceeds."). The district court read this language to imply that a participant's express selection of a beneficiary other than the lawful spouse overrides the claim of the true spousal beneficiary.

The district court read too much into the *Durden* dicta. If the *Durden* participant had chosen someone other than his legal spouse as a beneficiary, § 1055(c)(2)(A) would have required either an award of benefits to the participant's legal spouse or her consent to a waiver of those benefits. The

object of our inquiry in *Durden* was to determine which of two claimants was the participant's spouse, who was either entitled to benefits or charged with the option to consent to a waiver. Since no beneficiary was named, we proceeded to rely upon the state law governing the identification of the proper spousal beneficiary. We referred to the possibility of a non-spousal beneficiary on the assumption that such a beneficiary might be selected according to the requirements of § 1055(c)(2)(A). Had a non-spousal beneficiary been named, § 1055(c)(2)(A) still would have required us to determine a participant's legal spouse, as this case demonstrates.

## CONCLUSION

Although it appears to us that Cleta is Wayne's surviving spouse, the district court made no express finding on that point. The district court is in the best position to determine whether Cleta and Wayne were divorced before Wayne married Lois. It should determine which woman was Wayne's spouse at the time of his death and then determine the proper beneficiary of Wayne's pension benefits. For the reasons stated above, we **REVERSE** the district court's judgment and **REMAND** for further proceedings in accordance with this opinion.